GOVERNMENT OF THE VIRGIN ISLANDS
Ex Rel. DELORES HYMAN, Appellant

v.

EVANS PRINCE, Appellee

No. 153-1969

Civil No. 33-1968

District Court of the Virgin Islands
Div. of St. Thomas and St. John

November 18, 1969

BRUCE MCGIBBON, ESQ., Assistant Attorney General of the
Virgin Islands, *for appellant*

JAMES A. RICHARDS, JR., ESQ., *for appellee*
ALMERIC L. CHRISTIAN, *Judge*

## OPINION

This is an appeal from a judgment entered in the Municipal Court of the Virgin Islands, Division of St. Thomas and St. John, Part II, in an action for paternity and support.

Relatrix Delores Hyman was delivered of a male child on May 27, 1968. She named one Evans Prince, a man thirty-seven years of age at the time of the trial, as the putative father, she being at that time twenty years old. At the time the child was conceived, she was a junior in high school. Defendant denied paternity, and elected to be tried, without jury, in the Municipal Court.

After one or two "false starts", trial was had on March 5, 1969, and, on April 28, 1969, the Court entered judgment dismissing the action, based upon its finding that, "—this Defendant cannot be the father—" of the child born to Relatrix.

The Government of the Virgin Islands, on behalf of Relatrix, filed a Notice of Appeal on May 5, 1969, and obtained an Order in this Court, allowing the appeal on May 7, 1969. The appeal so allowed, was argued on November 3, 1969.

Briefly stated, appellant's double-pronged argument is that (a) the finding and judgment of the Court below are based on highly prejudicial evidence, improperly admitted over proper objection, and (b) that such findings and judgment are not supported by competent evidence. Appellee, of course, stoutly maintains that the findings are valid in every respect, and that the judgment should be upheld.

613

Appellee, a married man and father, admitted having had sexual relations with Relatrix. He asserted that it was not until some time in mid-October, 1967, at "The Little Club", that he first met Relatrix, and that intercourse between them started in November 1967, and continued for some months thereafter, apparently up to March 1968, when she made her condition known to him. He admits having given her, at that time, ten dollars, so that she might, in his words "—find out when she get pregnant and who it belongs to."

Relatrix testified that she first met Appellee at "Madam Cecile's", at a dance some time in September 1967, and that she had sexual relations with him beginning in October 1967. That their usual meeting place was "The Little Club", which Appellee operated, and that it was after closing Appellee would take her to an apartment where the intercourse would take place—usually on Friday nights, and occasionally on Saturday nights. She further testified that at the age of seventeen she had indulged in sexual relations, but that since then she had not indulged in the sex act until she did so with Appellee, and with no one else.

Appellee, by way of corroborating his testimony as to the time and place of his first meeting with Relatrix called one Terrence Blyden as a witness on his behalf. This witness, responding to the question if he had been present when Relatrix and Appellee had been introduced to each other, answered affirmatively and said that it was in late October 1967, and at "The Little Club". However, the witness did not know what was said by the parties when they were allegedly introduced, nor did he hear the words of introduction. At best then, the witness contributed no more than that he had seen the parties together at "The Little Club" on a night late in October

1967. Both Relatrix and Appellee admit being at the Club together in October of 1967.

Of critical importance was when the parties first met and when intercourse between them commenced, for if Relatrix' story is correct, the child could have been conceived as a result of intercourse with Appellee. Contrariwise, if Appellee's version is true. With matters pretty much "touch and go", evidence was introduced tending to show that during the year 1965, and again between December 1967 and January 1968, Appellee had been receiving treatment to improve the count and motility of sperm in his semen—all of this over the objection of counsel representing Relatrix. Testimony was that one test revealed a sperm count of 2,600,000, and that a subsequent one, evidently late in 1967, to early in 1968, revealed a count of 3,000,000, with a motility of less than 15%, which a doctor testified would be considered dead sperm. This doctor testified that by medical standards a sperm count of at least 60,000,000, with motility of more than 15% was required before a male would be considered capable of impregnating a female. All of this crucial testimony should have been excluded on Government counsel's objection, since the doctor was testifying concerning tests not made by him, nor in his presence, nor under his direction. Further objection was made that there was no showing of the circumstances under which the specimen was collected, the amount collected, in what type of receptacle it was collected and preserved until testing, or how much time had elapsed between the taking and the testing of the specimen. Indeed, nothing was offered to show that the specimen tested, however it was tested, came from Appellee.

It was the issue of the fertility (or lack of fertility) of Appellee around which most of the evidence revolved. By the trial court's own estimate, it accounted for 90% of

the testimony taken. None of it was properly before the Court, but positively, as it was spelled out, one has to wonder if it did not tip the balance in favor of Appellee. True, the Court, after stating that "—there was no offer of the filing of any such laboratory tests—" (Tr. p. 138), went on to say, in its closing remarks (Tr. pp. 138–139) that, "—the Court finds, under any of the testimony I have heard in relation to the other sides of doctors' testimony other than fertility, this Defendant cannot be the father of this child." Yet, in the "Findings of Fact" made by the Court, it found the defendant to be suffering from a sperm deficiency and found also that on January 25, 1959 defendant's sperm count was 3,200,000. The state of the rest of the evidence considered, the judgment in this case can hardly be sustained on the theory that so glaring an error was harmless. To the contrary, it was highly prejudicial. Relatrix is entitled to her day in court, either with this deluge of testimony absent, or, if admitted, only after the proper foundation therefor has been laid.

There is an additional reason why a re-trial of this case would be in the interest of justice. The trial was pervaded with confusion. Although only one transcript (that of March 5, 1969) is before this Court on appeal, it is not clear that two other partial transcripts (adverted to as "false starts" above) did not play a part in the Court's consideration of the case. Moreover, the frequent personal exchanges between counsel and witness, and at times between counsel and court, lent a ludicrous air to the trial, not conducive to the serious and impartial determination, which a case of this gravity merits. On a re-trial, every effort should be made to avoid a recurrence of this situation.

The judgment of the Municipal Court is vacated, and the case is hereby remanded for a new trial.